The last case call for oral argument is People v. Slack. Council, whenever you're ready, you may proceed. Good afternoon, Your Honors. Council, Pete Skrog for the Appellant, Terrence Slack. The issue with this lynched evidence here is whether Mr. Slack was able to fully support his self-defense theory at trial. I'd like to start with the standard of review here briefly. I think the State is correct that generally evidentiary rulings are reviewed for abuse of discretion. In this case, that's a little difficult here because the court below never articulated the reasons in speaking the evidence out. So I think it's difficult to defer to a decision when we don't know what that reasoning was. I think it's even more difficult in this case where the reasons proffered below by the State were both legally erroneous reasons to keep the lynched evidence out. For one, the State said that there was no conviction in these prior acts, which is not required if a witness has personal knowledge, which is what the proposed testimony here was. And second, the State said, well, it shouldn't be lynched evidence because Mr. Slack was the initial aggressor, which was actually something for the jury to determine, and actually Slack should have been able to do that because in Illinois, lynched evidence can go up to who was the initial aggressor. So this was relevant admissible evidence that was part of his defense, and it was air to keep it out. In Illinois, lynched evidence is admissible both for the subjective state of mind of the defendant, whether he believes self-defense is necessary, and as I mentioned, for purposes of determining who the initial aggressor was, if that is a dispute, which it was in this case. So having said about the standard review, I think under any standard review, the trial court erred in this case because this was relevant admissible evidence that was vital to his defense. I think if we're looking at the reasons offered below are both erroneous. The State has argued that this evidence could have been kept out because it was remote, but I don't think this evidence can be considered remote, especially when you look at one of the prior instances was something that Mr. Slack was involved in, where Mr. Garrett pulled the gun, fired it. So it's not remote to him. Now, this is from 1997, but I don't think it's something that you would necessarily forget, which is actually, I think, evident from the record, because he brings it up when he's being interviewed by the police about this prior incident. And so I look at the remoteness here. If you look at the cases the State cites for remoteness being the reason they've kept this evidence out, there's a general idea that specular remote evidence can be kept out, but I don't think that would apply to the facts of this case. And for instance, like People v. Ellis, the 10 years that the State refers to was actually, I believe, Montgomery evidence. There was a Lynch evidence for a murder arrest or murder charge. There was no conviction, and they said, well, there's no evidence of it, which contrasted to this case, there was going to be someone with personal knowledge. The State also argues on appeal that it was perhaps proper to keep this evidence out because one of the proposed witnesses was Mr. Slack's sister, and it would be biased there. But once again, I think this is certainly the jury's role to judge the credibility of witnesses, and there was no judging of the credibility below because this testimony was never heard. And so I think it definitely, that's not a valid reason to have kept this Lynch evidence out. So, I mean, moving on to look at a couple of other cases the State has cited, I believe they're also distinguishable on this idea of remoteness. I mean, People v. Forguero, the essential point of that case was that the defendant didn't testify, and there was nothing in his confession about state of mind. So the evidence would not have been appropriate when there wasn't enough, there wasn't a basis to support the self-defense. Whereas here, there is evidence presented at trial through the statements, the videotape statements that are played, where Mr. Slack repeatedly says he thought he was reaching for a gun. He struggled, he kept reaching for something. So he knew he carried a gun. And so that case, I don't think that case is off point. But this case, where there is evidence presented regarding his state of mind, and this prior act would have bore directly on that. If there are no more questions on the Lynch evidence, moving quickly to the autopsy photograph issue. You know, I think once again, autopsy photos are often relevant and admissible, and I think there was only two that were objected to here. But in this case, they were extremely gruesome, and I don't think they really bore on any disputed issue at trial. And as People v. Leffler said, when the goriness of the autopsy photo was a direct result from the autopsy itself, as opposed to looking at the wounds as they appeared, that can be more prejudicial, especially when it's not a disputed issue. And Mr. Slack didn't dispute that force was used in this death. It was just whether it was justified. So I think peeling back the skull and giving the jury this photo to view was prejudicial. With regards to the theft instruction, the state agrees that theft is a lesser-included offense of armed robbery. Their contention is that the evidence didn't support it, and in the end, it was harmless. Now, I think the evidence, there was evidence here. To have a lesser-included instruction requires only slight evidence. It could be of dubious credibility. That's not really a determination. If there's even slight evidence to support a lesser-included instruction, it should be given. And here, there was that evidence that came in the form of, once again, the statements that were played for the jury where Mr. Slack said that he did not intend to take the money when he went there. He wanted to borrow money. They had a longstanding relationship. And then after the fight was over, he then saw the ball, and it was more of a crime of opportunity. So that is enough right there to warrant the instruction. Now, the state's other argument is that in the air, not giving the instruction was harmless. And they thought people would be in Washington, which they noticed that in the briefs. They think it was wrongly decided. I think people would be bland. It's a more appropriate analysis of that issue. If you look at Washington, which says, well, if they're convicted of the greater, there's no harm in not instructing on the lesser. I think that would remove this entire issue from appellate review. I mean, I don't think there's ever going to be a case where they were not convicted of the greater when someone argues. There's obviously lots of case law dealing with the air of the trial court to not give a lesser-included instruction. And I think a bland explains why Washington's analysis is incorrect. When you have an error like this, this preserved constitutional error, the state has to show harmless beyond reasonable doubt. So if there was enough evidence to warrant the instruction, the harmless analysis is kind of subsumed right there. It's either the instruction wasn't warranted, or it was warranted, and it was error to not give it. So on that regard, I think people be bland is the more appropriate analysis for harmlessness on lesser-included instructions. So I think I've said most of what I want to say. If there are no further questions, I will take some time to develop. Absolutely. Thank you. Thank you. Thank you, counsel. Counsel. May it please the court. Counsel, my name is Whitney Atkins, and I represent the state of Illinois. The court below had legitimate, valid reasons that are held by precedent to exclude the defendant's family's testimony from the trial. A trial court's decision as to whether evidence should be admissible, whether evidence is relevant, is reviewed under the abuse of discretion standard. Abuse of discretion is found where the trial court's decision is arbitrary, fanciful, unreasonable, or where no one could have taken the trial court's view. In light of the myriad of reasons that the trial court should have barred Natalie and Jacqueline Slack's testimony, it hardly can be said that the trial court's decision was unreasonable. And those reasons are as follows. First, the remoteness. One of the prior acts of violence that Natalie Slack was going to testify to, that the victim once pulled a gun out on the defendant, occurred 15 years before the incident at hand. As to the other prior acts of violence, the defendant offered no time frame for when they occurred. So you've got one that occurred 15 years and no time frame for the others. So very reasonable for the court to exclude this testimony. Secondly, the defendant below at the trial, the defendant expressly offered Natalie and Jacqueline's testimony for the purpose of proving that the defendant was known for carrying a gun. That does not prove violent character. Nonviolent crimes do not prove violent character. And this is actually a fact that the defendant concedes. Third, the defendant's offer of proof was completely devoid of material details. The circumstances of these acts where exactly what transpired was not included in the offer of proof. And finally, the testimony was cumulative. And it was repetitive of the statements that the defendant made in his confession tape. Did the victim have a weapon? Did the victim have a weapon? No, he had no weapon and no weapon was found. At the scene. He had no weapon at the scene and no weapon was found. In his home, on his person, or at the crime scene. But the weapon of the defendant was found. So Natalie Slack would have testified that the victim carried a gun, that he pulled out a gun on the defendant, and had threatened the defendant's cousin Stanley. In the defendant's confession tapes, he testified that the defendant had a gun, had pulled out a gun on him, and had fought his cousin. So the exact same statements were brought into the trial, exact same evidence. It was in the trial court's discretion to admit Natalie Slack's testimony, Jacqueline Slack's testimony. And in light of very serious concerns, I don't think that the defendant can and has shown that there was an abuse of discretion here. However, assuming arguendo, that the alleged error did occur, it was harmless. When a reviewing court is determining whether error is harmless, it can do, it can focus on three of the following things. First, whether the error, the alleged error may have contributed to the conviction. Secondly, whether the properly admitted evidence overwhelmingly supported the conviction. And then lastly, whether improperly admitted evidence is merely cumulative. Here, the error did not contribute to the defendant's conviction. The properly admitted evidence was, you know, overwhelmingly supported the defendant's conviction. And as I had discussed before, the excluded evidence was cumulative of admitted evidence. After Robert Garrett, the victim, refused to lend the defendant a few bucks, he headed into his home. So they had had an exchange about the victim lending the defendant a few bucks, and the victim said no, and he headed into his home. At that time, the conversation was over. But the defendant perpetuated the situation and threw a beer can towards the defendant, and it hit the window. So he, he, he, and these are his own, this is his own testimony, his own statements in the confession. So he perpetuated the situation. At that point, naturally, the victim comes towards him. He punches the victim in the head. Again, he's perpetuated the situation. He then puts the victim in a headlock, throws him to the ground, takes a concrete bird bath feeder, crushes him in the head, strikes him in the head, then finds a cord and strangles him to death. So twice the defendant perpetuated this situation by his own statements, and he essentially admits to being the initial aggressor. And as such, he must prove that he exhausted all means to withdraw, and he provided no evidence of that. Therefore, he wouldn't, he wasn't able to prove his self-defense claim. And again, the evidence was overwhelming. The victim was a 77-year-old man who had a catheter attached to him, and the defendant beat him viciously. And, and again, the, the Nally's testimony was cumulative. But therefore, in three ways, the state was able to establish that the alleged error was harmless. I turn to the second issue. The case law is very straightforward on this issue. Illinois rebuting courts have held that photographs may be admitted to prove the nature and extent of the injuries, the manner and cause of death, to aid in the understanding of the testimony of the pathologist, understanding the manner in which the wounds were inflicted, and the wilfulness of the act. Here, the photographs that, the contested photographs proved all of those things. It proved the nature and extent of the injuries, the amount of force, the cause of death. They assisted in understanding the pathologist's testimony. So in light of the, the contested photographs serving all these purposes that precedent has indicated are valid and legitimate, just renders defendant's argument completely merit, meritless. And he, in his, in his, in his argument, he, he focuses on the fact that the photographs didn't, didn't prove a disputed issue. But the photographs do not have to prove a disputed issue to be admissible. So finally, as to the third issue, the defendant just doesn't meet the evidentiary minimum required to have the jury instructed on the lesser offense of theft. A jury is entitled to be instructed on a lesser included offense when there is evidence at trial that would support a conviction on that offense. And there just was not a scintilla of evidence here. A person commits armed robbery when he or she knowingly takes property from the person, person or presence of another by use of force and is armed with a dangerous weapon other than a firearm. Whereas a person commits theft when he or she knowingly obtains or exerts unauthorized control over property of the owner. So under the evidence, no jury could have reasonably believed that defendant acted without force. He, but for him not beating him using force, he would not have gotten the wallet. He could not have gotten the wallet unless he used force. The robbery and the murder occurred contemporaneously. There's no evidence that it was a crime of opportunity. It was a crime that only could have happened by the use of force. So there was nothing unreasonable about the court's decision to forego instructing the jury on the lesser offense of theft. In fact, it would have been unreasonable to instruct them on the offense. For the aforementioned reasons, the people asked this quarter from the judgment below. Thank you, Counsel. Counsel. One thing I want to say that I did actually forget to say earlier is that the jury here was also instructed on secondary murder and unreasonable belief in self-defense. So I want to make sure that all of this lynch evidence would have also been relevant for the second degree instruction, so that even if his belief in self-defense wasn't reasonable, they still could have mitigated it down to second degree. And based on, you know, his prior dealings, that definitely would have wore on that issue. The state now is offering these reasons of why these witnesses should not be allowed to testify that were never offered below. And I think it's unfair that the defense counsel, I mean, basically the state below said, well, there was no arrest, so they're not admissible, which is incorrect. The judge apparently bought that. But to now say, well, they were too remote, it was 15 years ago, we don't know where the other one took place, well, that's why they shouldn't testify. That could have been fleshed out. And, I mean, perhaps it was an imperfect offer of proof on one of the prior instances. But the judge didn't say, I'm not going to admit it because it was too remote. He said, well, he apparently followed the state's analysis and said there was no conviction, which is legally erroneous. Further, I don't think this evidence would be considered cumulative. I mean, you're looking at the statement that comes out of Mr. Slack's mouth justifying his actions. The jury is probably going to view that, or at least perhaps view that as self-serving. Corroboration is crucial in a case like this. And if you have a corroborating witness to say, yes, he'd been violent before, he'd pulled a gun before. So I don't think you could say it's cumulative. Also, as people view wider than just the sight of the brief, it's also the defendant's perception, not actual danger. So the fact that a gun wasn't found doesn't necessarily mean that second degree or self-defense could not have been achieved. And I think the other thing the state says is carrying a gun is not a crime of violence. Well, I would agree with that in general circumstances. But that's not the proposed testimony here. Threatening with a gun, firing a gun, now that is a crime of violence. So I think there's a big difference between carrying a gun and threatening people with that gun. Especially in here, the threat was to Mr. Slack. So it's especially relevant for his frame of mind. Briefly, I don't think Mr. Slack admitted that he was the initial aggressor. That was a disputed fact. The jury was given that instruction. If that had been decided as a matter of law, self-defense would not have been allowed in this case anyway. So I think all of these issues bore on that disputed issue. Briefly, with the autopsy photo, people be left where it says, yes, even if relevant, if it's more prejudicial than probative, and where you get to here where there was really no dispute that there was bleeding in the brain, this peelback spill, I would say, was more prejudicial than probative. And then with the instruction issue, the state says there's no evidence to support this theft, that this was a crime of opportunity that occurred after this incident was over. The evidence is from the same evidence that the state used to convict him. The evidence is in his statement. Now, I know the jury can believe all or part or even what it wants on the statement, but the fact remains that evidence was there sufficient to warrant this lesser-included instruction. So for those reasons, I would ask this Court to reverse Mr. Slack's conviction and remand for a new trial. I don't believe so. Thank you, counsel. We appreciate the briefs and arguments of counsel. We'll take the case under advisement. There will be no further oral arguments scheduled before the Court. We are adjourned and reconvene at 9 o'clock tomorrow morning. All rise.